IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY DAVIS,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | No. 3: 25-CV-901-K-BW |
| IRVING INDEPENDENT<br>SCHOOL DISTRICT,<br>　　　　Defendant. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Irving Independent School District's ("IISD")

Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint and Brief in

Support, filed on September 3, 2025.  (*See* Dkt. No. 13 ("the Motion" ("Mot.")).)  The

action was referred to the undersigned magistrate judge for pretrial management and

recommendation on claim-dispositive motions pursuant to 28 U.S.C. § 636(b) and

Special Order No. 3-251.  (*See* Dkt. No. 3.)

Based on the relevant filings and applicable law, the undersigned recommends

that the Motion (Dkt. No. 13) be **GRANTED** as set forth below.

**I.  BACKGROUND**

Plaintiff Timothy Davis, proceeding pro se, filed a lawsuit against IISD on

March 21, 2025, in the 68th Judicial District Court in Dallas County, Texas.  (*See*

Dkt. No. 1-1 ("Original Petition") ("Pet.").)  Davis alleged racial discrimination and

retaliation under Title VII of the Civil Rights Act of 1964.  (*See id.* at ECF p. 2.)

Davis attached to his Original Petition a copy of his Notice of Right to Sue letter

1

from the Equal Employment Opportunity Commission ("EEOC"), issued on December 23, 2024, notifying Davis that he had 90 days to file suit.[1]  (*See* Dkt. No. 1-1 at ECF. p. 7.)  IISD timely removed the action to this Court pursuant to 28 U.S.C. § 1446(b) on April 11, 2025.  (Dkt. No. 1.)

On the same day, IISD moved to dismiss Davis's Original Petition pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  (Dkt. No. 6.)  On May 1, 2025, Davis filed a response consisting of a one-page letter lacking any legal argument or reference to the arguments asserted in IISD's motion (Dkt. Nos. 8), along with several pages of "supporting documents" that Davis alleged support his claim (Dkt. No. 8-1).[2]  IISD filed a reply on May 6, 2025.  (Dkt. No. 9.)

On August 8, 2025, the undersigned issued findings, conclusions, and recommendation ("FCR"), recommending that IISD's Motion to Dismiss be granted and Davis may be given an opportunity to amend his complaint.  (*See* Dkt. No. 10.)  The Court accepted the FCR on August 25, 2025 (*see* Dkt. No. 11), and Davis filed his Amended Complaint one day later.  (*See* Dkt. No. 12.)

Thereafter, on September 3, 2025, IISD filed the present Motion to Dismiss.  (Dkt. No. 13.)  Davis's response to the Motion, if any, was due on September 24,

---

[1] Davis did not attach a copy of the EEOC Charge of Discrimination to his Original Petition.

[2] Among other things, the attachments included a copy of Davis's EEOC Charge of Discrimination, dated September 26, 2024. (*See* Dkt. No. 8-1 at ECF p. 3-4.)

2025.  *See* N.D. Tex. L.R. 7.1 (e) (A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed.).  Davis did not file a response within the required deadline, but the undersigned nevertheless granted Davis an additional opportunity to respond to the Motion, extending his deadline to file a response to October 8, 2025.  (Dkt. No. 14.)   Davis still did not file a response. Because Davis has not filed a response to the Motion (despite being given ample time to do so), the Court may consider the Motion ripe and ready for determination. Davis's Amended Complaint (Dkt. No. 12 ("Am. Compl.")) remains the operative complaint.

Davis alleges the following facts in his three-page Amended Complaint. While he was employed as a special education classroom teacher at IISD, he was subjected to "discriminatory practices based on race and gender starting on or about August 22, 2022."  (Am. Compl. ¶¶ 4.1-4.2.)  He alleges that, as the only black male teacher on campus, he was reprimanded by Assistant Principal Angelica Fountain "for going to the bathroom" and she made "inappropriate comments" to Davis regarding his work performance and stating that "he could 'do whatever to [a Sped student] as long as the camera's don't catch you.'" (*Id.* ¶ 4.3.)  Davis also alleges that two black employees were injured by a student "including one employee filing a police report," and the student "received no consequences."  (*Id.*)

Davis also alleges that in November 2022 he was injured apparently by this same student and "sent to Urgent Care." (*Id.*)   "The student received no consequences." (*Id.*)   Davis asserts that "[o]n several occasions throughout October

3

[to] December 2022, Non-black employees (including Ms. Fountain) were injured by the student[,] and [the student] did receive consequences." (*Id.*)  Davis then alleges that "[p]ursuant to state law," he requested the student be removed from his classroom, but IISD failed to do this for "over two months." (*Id.*)  The complaint provides no additional facts regarding the alleged injury that caused him to be sent to urgent care, IISD's alleged failure to discipline the student, or the alleged similar assaults on "other non-black staff members" for which the student was disciplined. (*See id.*)

Davis next alleges that "[t]he stress and bodily injury [he] experienced placed him on leave starting in January 2023." (*Id.*)  Then, in April 2023, IISD "threatened to non-renew his contract due to him being unable to complete an ESL [English as Second Language] certification, but according to Davis, he was unable to complete this certification "due to being on leave." (*Id.*)  IISD then "refused [his] request for more time to complete the certification once the doctor approved the end of his leave, so [he] was forced to resign in order to keep his Teaching certification to be able to continue to provide for his family." (*Id.*)  Davis does not provide any additional details regarding his placement on leave, his approval to return to work, or any communications between himself and IISD regarding the leave or the certification requirement.  (*See id.*)

Davis further alleges that throughout August to December 2022, he and his black co-teacher were "continually denied breaks and planning periods" while other non-black employees "were not denied their breaks and planning periods." (*Id.*)

Davis went through the grievance process with IISD, where he "provided any documentation requested throughout all events" and "was told he would receive copies of all documentation, but when his attorney requested the documents, IISD "continually denied their requests." (*Id.*)

Davis then reported this discrimination to Assistant Principal Fountain, Principal Amara Bravo, and Human Resources, but IISD "failed to take appropriate corrective action." (*Id.* ¶ 4.3.)

## II.  LEGAL STANDARDS

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A recitation of the elements of a cause of action, supported merely by conclusory statements, do not suffice. *See id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557 (cleaned up)).

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* And so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). And "[w]hen 'an allegation is

6

contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (internal citations and quotations omitted).

Documents "attach[ed] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Fifth Circuit case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. *See, e.g.*, *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

But "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*; *see also Carter v. First Nat'l Collection Bureau, Inc.*, 135 F. Supp. 3d 565, 574 n.11 (S.D. Tex. 2015) ("The Court may consider, in a Rule 12(b)(6) analysis, documents attached to a motion to dismiss—or, as here, to a response in opposition to a motion to dismiss—if the documents are 'sufficiently referenced in the complaint.'") (citing *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008)).

Pro se complaints receive a "liberal construction." *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (citations omitted). A "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal

quotations omitted). But "mere conclusory allegations on a critical issue are insufficient." *Id.* "Liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

The Fifth Circuit has consistently held that the mere failure to respond to a motion is insufficient to justify dismissal with prejudice. *See Watson v. U.S. ex rel. Lerma*, 285 F. App'x 140, 143 (5th Cir. 2008); *John v. Louisiana (Bd. of Trs.)*, 757 F.2d 698, 713 (5th Cir. 1985). When a nonmoving party does not file any response to a motion to dismiss, the Court cannot properly grant "the motion to dismiss for failure to state a claim solely because the [nonmoving party] failed to oppose the motion." *Webb v. Morella*, 457 F. App'x 448, 452 n.4 (5th Cir. 2012) (citing *John*, 757 F.2d at 707-10) ("[A]lthough we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation.").

As the Fifth Circuit has explained, "Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion. Rather, a court assesses the legal sufficiency of the complaint." *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (citing *John*, 757 F.2d at 707–10; *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.")). And, by dismissing claims under Federal Rule of Civil Procedure

8

12 based on only a nonmovant's lack of action at all (that is, not filing a response

that Rule 12 itself does not require to be filed), a district court would be improperly

dismissing with prejudice without the findings or factual support required under

either Rule 12 or Federal Rule of Civil Procedure 41(b) for such a dismissal. *See*

*Servicios Azucareros*, 702 F.3d at 806; *Webb*, 457 F. App'x at 452-54 & n.4; *John*, 757

F.2d at 707-10.

### III.  ANALYSIS

Davis asserts causes of action for discrimination and retaliation under Title

VII of the Civil Rights Act.  (Am. Compl. ¶¶ 5.1-5.2.)  Title VII prohibits

discrimination against "any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e–2.  As discussed further below,

Davis's Amended Complaint consists of vague and conclusory factual statements

that offer few explanatory details about the events alleged, and many of the events

alleged are time barred because they did not occur with the limitations period for

Title VII claims.  Accordingly, Davis's Title VII claims should be dismissed pursuant

to Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable

claim.

**A.     Some of the alleged discriminatory actions underlying Davis's claims are barred by limitations.**

Before an individual may pursue a Title VII claim in federal court, he must

timely exhaust administrative remedies.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376,

378–79 (5th Cir. 2002). In Texas, which provides a state administrative mechanism to address claims of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after the alleged discrimination occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994); *see also Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 117 (5th Cir. 2005); *see Pacheco v. Mineta*, 448 F.3d 783, 788–91 (5th Cir. 2006); *Drerup v. Consol. Nuclear Sec., L.L.C.*, No. 21-10600, 2022 WL 3335780, at *2 (5th Cir. Aug. 12, 2022) (unpublished).

In general, exhaustion occurs when a charge is filed, and a right-to-sue letter is subsequently received. *Josey v. Caris Life Scis., Inc.*, No. 3:23-CV-1297-B, 2024 WL 1122049, at *2 (N.D. Tex. Mar. 14, 2024). This first administrative step is in place to put employers on notice of the "'existence and nature of the charge against them.'" *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 55 (1984)). In the event that administrative remedies are not exhausted, it is proper for a court to dismiss the associated claims. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (upholding a dismissal when the administrative remedies were not exhausted). Similarly, if a charge is not filed within the prescribed timeframe, the claims are time barred. *See Drerup*, 2022 WL 3335780, at *2 (upholding that a charge filed after the time limit was properly barred). This 300-day time limit also operates as a statute of limitations. *Storbeck v. Saks Fifth Ave.*, 224 F.3d 764, 764 (5th Cir. 2000). Claims that are not based on any

10

alleged discrimination that occurred within the 300-day window must be dismissed. *Woods v. Lancaster Indep. Sch. Dist.*, 834 F. Supp. 2d 512, 516 (N.D. Tex. 2011) (citing *Taylor*, 296 F.3d at 379).

"[B]ut the 300–day filing period is not jurisdictional; it is more akin to and operates as a limitations period, commencing on the date the alleged unlawful practice occurred." *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (citing *Adams v. Cedar Hill Indep. Sch. Dist.*, No. 3:13-CV-2598-D, 2014 WL 66488, at *2 (N.D. Tex. Jan. 8, 2014)).  When asserted in response to a Title VII claim, limitations is an affirmative defense that "must appear clearly on the face of the pleadings." *Taylor v. Lear Corp.*, No. 3:16-CV-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017).  "Stated another way, the defendant is not entitled to dismissal under [either Rule 12(b)(6) or Federal Rule of Civil Procedure] 12(c) unless the plaintiff has pleaded [him]self out of court by admitting to all of the elements of the defense." *Clemmer*, 2015 WL 1757358, at *2 (cleaned up).

Davis's EEOC charge is properly before the Court.  Although the Amended Complaint (Dkt. No. 12) is the operative complaint, Davis attached a copy of his EEOC Notice of Right to Sue letter to his Original Petition (*see* Dkt. No. 1-1 at ECF. p. 7), and he attached a copy of the EEOC charge to his response to IISD's first motion to dismiss (*see* Dkt. No. 8-1).  Thus, arguably, these documents have been made part of the pleadings. *See Katrina*, 495 F.3d at 205; *Gill*, 941 F.3d at 511.  But even if not referenced in the complaint and central to Davis's claims, the Court can

take judicial notice of the EEOC charge as a public record. *West v. R&K Enter. Sols.*, No. 3:23-CV-1371-G-BN, 2024 WL 3891533, at *5 (N.D. Tex. July 19, 2024), *adopted*, 2024 WL 3891838 (N.D. Tex. Aug. 21, 2024) ("Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested.") (citing *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011)).

Davis filed his EEOC charge on September 26, 2023 (*see* Dkt. No. 8-1 at ECF p. 4), so to pursue a Title VII claim, he must plausibly assert discrimination that occurred within 300 days before September 26, 2023, the date he filed his filed his EEOC charge, which is November 30, 2022. *See Anderson v. City of Dallas*, 116 F. App'x 19, 27 (5th Cir. 2004) ("An individual [raising claims] under Title VII must file a charge of discrimination with the EEOC within 300 days of learning of the allegedly adverse employment action."); *Hendricks v. Boy Scouts of America*, No. 3:15-CV-304-M, 2015 WL 5459612, at *5–6 (N.D. Tex. Sept. 16, 2015); *Stith*, 122 F. App'x at 117.

Here, Davis's complaint describes several events that occurred before November 30, 2022. For example, the bathroom reprimand incident took place in August 2022, the injuries to two Black employees occurred in September 2022, and Davis's injury at the hands of a student occurred on November 7, 2022. (*See* Am. Compl. ¶ 4.3.) Because these incidents preceded the limitations window, they cannot independently support a Title VII claim. *See Kelley*, 2023 WL 4003299, at

*14.  Similarly, Davis's allegation that "[he] reported the discrimination to Assistant Principal Angelica Fountain, Principal Amara Bravo and Human Resources, but Defendant failed to take appropriate corrective action" provides no dates or other factual matter to establish that this alleged report was made within 300 days before the filing of his EEOC charge on September 26, 2023—that is before November 30 2022.  (*See* Am. Compl. ¶ 4.4.)  Accordingly, it is unclear whether he exhausted his administrative remedies with respect to this alleged report of discrimination.  A plaintiff alleging employment discrimination or retaliation under Title VII must exhaust administrative remedies before pursuing his claims in federal court.  *Owens v. Dallas Cnty. Cmty. Coll. Dist.*, 793 F. App'x 298, 300 (5th Cir. 2019); *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 489–90 (5th Cir. 2010).  As explained above, only acts on or before November 30, 2022 have been exhausted, and lacking any specific dates, it is unclear whether or not this alleged report f has been properly exhausted.

Additionally, although the Amended Complaint references gender-based discrimination (*see* Am. Compl. ¶ 4.2), Davis's EEOC charge alleged only race discrimination (*see* Dkt. No. 8-1 at ECF p. 3-4), and therefore, no gender-based claims were presented to the EEOC for investigation.  Because Davis's EEOC charge does not mention gender-based discrimination, that claim has not been administratively exhausted and should be dismissed.  *Brooks v. Firestone Polymers*, LLC, 70 F. Supp. 3d 816, 841 (E.D. Tex. 2014) ("It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not

first exhausted his administrative remedies by filing a charge of discrimination with the EEOC.").

### B. Davis has failed to plausibly plead a Title VII discrimination claim.

Even if some of the alleged incidents described above were timely, they nevertheless fail to set forth a prima facie case of Title VII discrimination or retaliation because the Amended Complaint lacks sufficient factual matter, even if accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (2009).

A plaintiff establishes a prima facie case for discrimination when he shows that he: "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Jackson v. Dallas Cnty. Juv. Dep't*, 288 F. App'x 909, 911 (5th Cir. 2008) (quoting *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)); *see also Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) ("Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin.").

At the Rule 12(b)(6) stage, however, a plaintiff need not plead sufficient facts on the prima facie elements of a disparate treatment claim. *Cicalese*, 924 F.3d at 766. Plaintiffs instead must plead two "ultimate elements" to support a disparate treatment claim: (1) an adverse employment action (2) that was taken against a

14

plaintiff because of his protected status. *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *4 (5th Cir. Oct. 8, 2024) (unpublished). Even under this more forgiving standard, a plaintiff must still "plead specific facts, not mere conclusory allegations," and the court "will not accept as true conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

On the first element, the Amended Complaint fails to identify a cognizable adverse employment action. An "adverse employment action" includes "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating" and the "terms, conditions, or privileges of employment." *See Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *5 (5th Cir. Oct. 8, 2024) (unpublished); *see also Hamilton v. Dallas Cty.*, 79 F.4th 494, 503 (5th Cir. 2023) (en banc). Davis does not claim that he was fired, demoted, failed to be promoted, or unfairly compensated. (*See generally* Am. Compl.) He merely alleges that while he was on medical leave, IISD "threatened to non-renewed [sic] [his] contract due to him being unable to complete an ESL certification[,]" and when IISD refused Davis's request for more time to complete the certification, "[he] was forced to resign in order to keep his Teaching certification to be able to continue to provide for his family." (Am. Compl. ¶ 4.3.)

Importantly, Davis does not allege any coercive or discriminatory action by IISD, but rather, attributes his resignation to personal considerations. (*See* Am. Compl. ¶ 4.3. ("Plaintiff was forced to resign . . . to continue to provide for his

15

family").)  Moreover, Davis acknowledges that the threatened nonrenewal was because he lacked an ESL certification (*see id.*)—a race-neutral qualification requirement, *see* Tex. Educ. Code § 21.0031(a)(1-2), not his race.  Furthermore, Davis pleads no specific facts regarding his bare allegation that IISD "refused" his request for more time to meet this requirement.  He does not plead when he made the request, to whom the request was made, and who refused the request.  Davis also does not assert that IISD's alleged refusal to grant him an extension was a race-based decision.

Moreover, although Davis expresses a belief that IISD should have given him more time, he does not address exactly how being on leave prevented him from obtaining the state-required certification or whether he made any attempt to obtain the recertification while on leave.  (*See generally* Am. Compl.)  As IISD points out, in-person training is not required, and the requisite hours can be obtained via "interactive distance learning, video conferencing, [or other] online activities." ((Mot. at 11 n.30 (citing 19 Tex. Admin. Code § 232.15(a)(1); § 232.7(c)(1); 232.11(d)).  Thus, it appears that Davis simply failed to timely complete his recertification requirements while he was on leave—requirements that he could have satisfied remotely—and now attempts to hold IISD responsible for his failure.

While pro se pleadings are entitled to liberal construction, that principle does not excuse a plaintiff from alleging facts that, if taken as true, plausibly establish an adverse action—and Davis's framing of his resignation as a voluntary career-preservation measure undermines any such inference.  *See Estelle*, 429 U.S. at 106.

Thus, as Davis himself recites—his allegation that he was threatened with nonrenewal of his contract was because he was not properly certified (*see* Am. Compl. ¶ 4.3), not because of his race.  *Smith,* 2024 WL 4442040, at *4 (regardless of the adverse action alleged, plaintiff must still satisfy the second pleading requirement—that the action was taken because of his protected status).

Next, considering the broad catchall category, "terms, conditions, or privileges" of employment, determining what falls within this category is a fact-specific inquiry, but hallmarks of these types of adverse employment actions include changes to "job title, grade, hours, salary, or benefits," as well as "diminution[s] in prestige or change[s] in standing among . . . co-workers."  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009).  Davis merely describes incidents that he found disagreeable or unpleasant.  (*See* Am. Compl. ¶ 4.3.)  For example, he alleges the following actions:

- From August to December 2022, Davis and his Black co-teacher were denied breaks and planning periods, while non-Black employees were not denied their breaks and planning periods.

- In September 2022, two Black employees were injured by a student, and on or about November 7, 2022, Davis was injured seemingly by the student, and in both cases, "the student received no consequences."

- On "several occasions" from October to December 2002, "non-[B]lack employees" were injured by the student, for which IISD disciplined the student but allegedly did not discipline the student when Davis was previously injured by the same student.

- In November 2022, Davis requested that the student be removed from his classroom "[p]ursuant to state law," which IISD failed to do for over two months.

(Am. Compl. ¶ 4.3.)  These alleged events are closer in kind to "normal[ ] petty slights" and "minor annoyances" that are the ordinary tribulations of the workplace, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), than to the adverse actions which materially alter the "terms, conditions, or privileges of employment," *Hamilton*, 79 F.4th at 503.  More importantly, Davis's pleadings do not create the "reasonable inference" that any of these events occurred because of his race.  *See Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021).

First, regarding denial of breaks and planning periods, Davis broadly asserts that this occurred from "August—December 2022," a time period that arguably includes at least some dates that are barred by the November 30, 2022 limitations deadline.  (*See id.*)  Davis describes being denied breaks and planning periods, but he does not explain what "breaks" he was allegedly denied that were given to other races and does not plead how he qualified for any planning periods.  (*See id.*)  Therefore, he fails to plead that breaks and planning periods were somehow allocated on the basis of race.  He merely alleges that he and one unnamed co-teacher did not receive breaks and planning periods while unnamed others did, allegations which do not plausibly establish that these scheduling decisions were due to racial bias.  *See, e.g.*, *Keplar v. Google, LLC*, No. 3:22-CV-2281-B, 2023 WL 7360891, at *4 (N.D. Tex. Nov. 7, 2023); *Kent v. Vicksburg Healthcare, LLC*, No. 5:10-CV-195 DCB-RHW, 2012 WL 1556511, at *11 (S.D. Miss. Apr. 30, 2012), a*ff'd sub nom. Kent v. Vicksburg Healthcare, L.L.C.*, 534 F. App'x 229 (5th Cir. 2013).

Because Davis does not plead specific facts but mere conclusory allegations, the Court is not required, without any other context, to make "unwarranted deductions of fact" that these alleged denials were due to Davis's race. *See Tuchman*, 14 F.3d at 1067. Lacking any facts plausibly stating that IISD's actions relating to breaks and planning periods were taken because of his race, Davis's allegations do not rise "above the speculative level" to survive a motion to dismiss. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

Davis next alleges that when he and other Black employees were injured by a student, the student received no consequences, but when non-Black employees were injured by the same student, the student received consequences. (Am. Compl. ¶ 4.3.) Davis does not identify either the Black or non-Black coworkers by name, does not specify which incidents occurred within the limitations period, does not identify who made the relevant decisions, and does not explain whether the coworkers were similarly situated in all material respects. (*See id.*) Instead, Davis asks the court to infer that the sole reason a student was not disciplined for injuring Black employees must have been race, without any allegations regarding the specific circumstances, the rules governing student discipline, the identity of the decisionmaker, or any allegations of any pattern or practice of race-based discipline decisions at the school. (*See id.*) Without more, the undersigned cannot infer that these alleged student disciplinary decisions were due to Davis's race. *See Tuchman*, 14 F.3d at 1067 (The court "will not accept as true conclusory allegations or unwarranted deductions of fact.").

19

Davis's allegation that in November 2022, he requested to have a student removed from his classroom, but "the student was not removed for the next two months" fails for similar reasons. (Am. Compl. ¶ 4.3.)  Davis does not allege that the student was not removed because Davis is Black, and nowhere in the Amended Complaint does Davis allege that students were removed from the classrooms of non-Black teachers, but not Black teachers' classrooms. (*See id.*)  And again, Davis fails to plead who made the decision, that the decision was based on the race of the teacher requesting the removal, or that there was a pattern or practice of discrimination on the campus with respect to granting or denying student removal requests based on teacher race. (*See generally id.*)

Moreover, although Davis refers to an unspecified "state law," he fails to cite to any specific Texas statute providing that a student may be removed simply based on a teacher's request. (*See* Am. Compl. ¶ 4.3.)  He also does not plead what, if any, documentation was submitted to support the removal request or explain how the incident was racially motivated. (*Id.*)  Accordingly, Davis's conclusory allegation that IISD "failed" to remove a student solely based on Davis's race does not meet the "facial plausibility" standard necessary to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678; *id.* at 663 (citing *Twombly*, 550 U.S. at 555).

For all these reasons, the undersigned concludes that Davis has failed to plausibly plead a Title VII discrimination claim.  The Amended Complaint does not identify an adverse employment action, nor does it plausibly connect any specific

action or event to racial animus.  Accordingly, IISD's motion to dismiss should be granted as to Davis's racial discrimination claim.

**C.      Davis has failed to plausibly plead a Title VII retaliation claim.**

"Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because [he] has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (internal citations and quotation marks omitted).

To support a Title VII retaliation claim, a plaintiff must establish that he: (1) engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action.  *See, e.g., Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008).   In the context of a retaliation claim, an adverse employment action must "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 548 U.S. at 68.  A threat of termination does not constitute an adverse employment action.  *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997), *abrogated on other grounds by Burlington*, 548 U.S. 53.

As an initial matter, it is unclear from the Amended Complaint what "retaliation" Davis alleges, or the facts that support such a claim.  (*See* Am. Compl. ¶ 5.2.)  The closest Davis comes to identifying any protected activity is his allegation that he "reported the discrimination to Assistant Principal Angelica Fountain,

21

Principal Amara Bravo and Human Resources, but [they] failed to take appropriate corrective action." (Am. Compl. ¶ 4.4.)  But Davis does not specify when he made the report, what he reported, or whether the actions he reported constituted "opposition to discrimination based on 'race, color, religion, sex, or national origin,'" as Title VII requires.  *Pitts v. Waffle House, Inc.*, No. 23-60436, 2024 WL 1904556, at *6 (5th Cir. May 1, 2024) (unpublished) (quoting *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010)).

Davis's retaliation claim also fails on the second and third elements.  He has not pleaded that an "adverse employment action" occurred based on his opposition of an unlawful practice, or that any "casual connection" existed between any protected activity and an adverse employment action.  (*See generally* Am. Compl.)  For the reasons previously explained, the threatened non-renewal of his contract, denial of breaks, failure to remove the student, and any other challenged conduct, do not constitute an adverse employment action.  Nor does Davis allege that this conduct occurred because he reported discrimination.  (*See id.*)  He also does not allege temporal proximity between his report and any adverse action, does not allege that the individuals to whom he reported were the same individuals who took adverse action against him, and does not allege any facts from which retaliation could be inferred.  (*See id.*)

Davis also vaguely alleges that "[he] went through the grievance process with [IISD]," during which he provided copies of documents and was "told he would receive copies of all documentation [but w]hen he or his attorney requested

documents, [IISD]continually denied their requests." (Am. Compl. ¶ 4.3.)  It is unclear if this allegation is intended as part of his discrimination claim or his retaliation claim, but because Davis does not state when this "grievance process" occurred, the undersigned is unable to discern whether the claim is administratively exhausted or otherwise barred by limitations; nor does Davis allege that he was denied the documents due to his race.  (*See id.*)  Accordingly, the undersigned does not presume these threadbare, conclusory allegations to satisfy the pleading requirements for either cause of action under Title VII.  *See Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington*, 16 F.4th 1159, 1162–63 (5th Cir. 2021)).

For all these reasons, the undersigned concludes that Davis has failed to sufficiently plead a Title VII retaliation cause of action, and IISD's motion to dismiss should be granted as to Davis's retaliation claim.

### D.    Davis should not be allowed to amend his complaint.

The Fifth Circuit advises courts to give pro se plaintiffs reasonable opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  District courts therefore typically allow pro se plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order.  *See*

23

*Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

"[T]he grant of leave to amend the pleadings pursuant to [Federal Rule of Civil Procedure 15(a)] is within the discretion of the trial court*." Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Under Rule 15(a)(2), "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15(a)'s liberal amendment policy compels that leave to amend should be granted absent some justification for refusal, such as undue delay, bad faith, dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party by virtue of allowance of the amendment." *Kirkland v. Racetrac Petroleum, Inc.*, No. 3:13-CV-1754-N, 2014 WL 982852, at *4 (N.D. Tex. Mar. 13, 2014) (citing *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir.2003)). The Court, however, need not grant leave to amend "'if the plaintiff has already pleaded his best case.'" *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

Here, the relevant factors weigh in favor of dismissal without leave to amend. Davis has failed to allege sufficient facts to state a claim for relief, despite being given an opportunity to amend his complaint. (*See generally* Am. Compl.) Furthermore, Davis was previously instructed that "the Court will consider his amended complaint to be his best pleaded case." (Dkt. No. 10.) And although a pro se plaintiff's pleadings are held to less stringent standards than pleadings drafted by lawyers, *Estelle*, 429 U.S. at 106, those "pleadings must show specific, well-pleaded facts, not

24

mere conclusory allegations to avoid dismissal." *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 747 (N.D. Tex. 2013) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992)).

The deficiencies in Davis's Amended Complaint are substantial and appear to reflect the nonexistence of facts rather than mere drafting failures by a pro se litigant. *See Coleman*, 969 F. Supp. 2d at 747.  Davis's own allegations establish that his resignation was voluntary and motivated by personal career concerns, that the "threatened" nonrenewal was based on a race-neutral certification requirement, and he has no specific facts connecting any alleged conduct to racial hostility.  (*See generally* Am. Compl.)  Under these circumstances, allowing Davis another opportunity to amend his claims would be futile.  *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997).

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that IISD's Motion to Dismiss (Dkt. No. 13) be **GRANTED**.

**SO RECOMMENDED** on May 11, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

26